Dante GILLIAM, Jamie Morrison, Latoya Straughn, Napoleon Berrian and Mark Simmonds, Plaintiffs,

v.

HBE CORPORATION and HBE–Florida Corporation d/b/a Adam's Mark Hotel, Defendants.

No. 6:99–CV–596–ORL–22C.

United States District Court, M.D. Florida, Orlando Division.

Oct. 13, 2000.

Charles Gilbert Burr, III, Sam J. Smith, Karen M. Doering, Burr & Smith, LLP, Tampa, FL, Dennis Courtland Hayes, NAACP Special Contribution Fund, Baltimore, MD, Robert B. McDuff, Law Office of Robert B. McDuff, Jackson, MS, Omar V. Melehy, Melehy & Melehy, LLC, Silver Spring, MD, Bruce Courtland Hayes, Bruce Gear, Dick P.C. Lawson, National Association for the Advancement of Colored People, Baltimore, MD, Christine R. Ladd, John P. Relman, Elizabeth S. Westfall, Kelli M. Evans, Relman & Associates, Washington, DC, Lars Waldorf, Lawyers' Committee for Civil Rights and Urban Affairs, Washington, DC, James E. Ferguson, II, Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, Charlotte, NC, for plaintiffs.

Walter David Rogers, Jr., Duncan B. Dowling, III, David C. Knapp, Rogers, Dowling, Fleming & Coleman, P.A., Orlando, FL, Rebecca A. Naser, Michael J. Pollack, Jerry A. Moore, III, Gregory V. Mersol, Michael R. Goodstein, Arter & Hadden LLP, Washington, DC, Michael M. Baylson, Teresa N. Cavenagh, Lisa Lang Olsson, Sandra A. Jeskie, Stephan A. Mallozzi, Cindy Dunlap Hinkle, Duane, Morris & Heckscher, Philadelphia, PA, for defendants.

## ORDER

CONWAY, District Judge.

### I. INTRODUCTION

This cause comes before the Court for consideration of the Joint Motion of Plaintiffs, Defendants, and the State of Florida for Preliminary Approval of Proposed Settlement Decree (Doc. 98), filed March 21, 2000.[1] The Court held a hearing on the motion on October 6, 2000. Upon considering the parties' submissions, the Court determines, for reasons that follow, that binding decisions of the Supreme Court of the United States and the United States Court of Appeals for the Eleventh Circuit preclude the Court from certifying this case as a class action. Accordingly, regardless of the Court's views

concerning the overall benefits of the proposed settlement, the Court is left with no choice but to deny the motion.

### II. BACKGROUND AND PROCEDURAL HISTORY

On May 20, 1999, Dante Gilliam, Jamie Morrison, Latoya Straughn, Napoleon Berrian, and Mark Simmonds filed a complaint against HBE Corporation d/b/a Adam's Mark Hotels ("HBE"), seeking to represent a class of black persons who experienced race discrimination at the Daytona Beach Adam's Mark Hotel ("DBAMH") during Black College Reunion ( "BCR") in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq., and 42 U.S.C. § 1981. On December 3, 1999, the named plaintiffs filed their Second Amended Complaint, which added HBE–Florida Corporation as a defendant. Throughout this Order, the instant action will be referred to as "the Gilliam case."

On December 16, 1999, the Florida Attorney General's Office moved to intervene in the Gilliam case and tendered a complaint against HBE, HBE–Florida, and Frederick S. Kummer, the Chief Executive Officer of HBE, asserting supplemental state claims under Florida's Unfair and Deceptive Trade Practices Act, Chapter 501, Part II. On January 18, 2000, the Court granted the State of Florida's Motion to Intervene.

On December 16, 1999, the United States instituted a separate action against HBE, alleging violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq. *United States v. HBE Corporation d/b/a Adam's Mark Hotels,* 6:99–CV–1604–ORL–22C. Hereinafter, case no. 99–1604 will be referred to as "the DOJ suit." Therein, the United States did not seek class action treatment.[2]

On March 21, 2000, the parties in the Gilliam case presented the Court with a proposed settlement decree and the instant joint

---

1. Fed.R.Civ.P. 23(e) requires court approval of class action settlements.

2. Portions of the foregoing recitation of background facts and procedural history are derived from the parties' proposed settlement decree in case no. 99–596. *See* Doc. 105 at 1–2.

motion for preliminary approval of the proposed decree. At the same time, the parties in the DOJ suit submitted a proposed settlement decree in that action.

The two proposed settlement decrees encompass virtually identical injunctive relief. They both contain a prohibition against future discrimination in the treatment of customers. Additionally, the proposed decrees require the hiring of a compliance officer to oversee all aspects of the defendants' compliance with the provisions of the decree and to investigate customer complaints of race discrimination. Briefly summarized, the decrees also

> require defendants, with the assistance of the Compliance Officer, to (1) submit all customer and group service policies for review to insure they comply with the nondiscrimination remedial goals of the Decree; (2) adhere to specific nondiscrimination policies regarding special events, including BCR, held at the Daytona Beach Adam's Mark Hotel; (3) provide notice to employees and agents about both the terms of this Decree and the requirements of the federal and state public accommodations laws; (4) design and implement nondiscrimination training programs for all employees; (5) establish a complaint procedure for complaints of discrimination against guests or patrons on the basis of race or color; (6) provide notice to the public of Adam's Mark's commitment to nondiscrimination on the basis of race or color, and affirmatively market to minority customers; and (7) establish a "testing" program of Adam's Mark hotels nationwide by an independent organization to determine whether discriminatory practices on the basis of race or color against guests or patrons exist[.]

Memorandum in Support of the Parties' Joint Motion for Preliminary Approval of Proposed Settlement Decree (Doc. 99) at 6–7.[3]

The proposed decree in the Gilliam case also calls for certification of a settlement class consisting of both hotel guests and visitors,

> defined to include (1) all black persons who were registered guests at the Daytona Beach Adam's Mark Hotel during 1999 BCR (defined as April 9–10, 1999), or who stayed in a room at the Daytona Beach Adam's Mark Hotel overnight as a part of a rooming group with a registered guest during 1999 BCR and (2) all black persons who visited, or attempted to visit[,] the Daytona Beach Adam's Mark Hotel during 1999 BCR (defined as April 9–11, 1999) and who did not stay overnight in a room . . ., who, as alleged in the Second Amended Complaint, were subjected to allegedly racially discriminatory practices or provided services in an allegedly discriminatory manner, on the basis of race or color.

*Id.* at 5.[4]

Under the terms of the proposed decree in the Gilliam case, the defendants would be required to pay $4,400,000 in class settlement funds. Of this sum, $3,100,000, would be allocated to a "guest fund," with the remaining $1,300,000 earmarked as a "visitor fund." Each of the five named plaintiffs would receive an up-front payment of $25,000 from the class settlement funds. The remaining settlement monies would be distributed on a *pro rata* basis to eligible claimants through a process handled by a claims administrator. The proposed Gilliam decree also grants additional monetary relief for the State of Florida's claims. In that regard, "[t]he Decree . . . requires the defendants to make payments to four historically black colleges located in the State of Florida in the amounts of $1,500,000 to support scholarship programs and $116,000 to be used to promote Black College Reunion." *Id.* at 10. Finally, the proposed Gilliam decree calls for payment to class counsel of attorneys' fees, costs and expenses in the sum of $1,750,000.

---

3. Although the foregoing summary is lifted from the memorandum regarding the proposed decree filed in the Gilliam case, it is equally descriptive of the injunctive provisions in the DOJ suit; as previously noted, the injunctive provisions in both proposed decrees are nearly identical.

4. The foregoing is merely a summary of the class definition; the precise description is lengthier, and appears at pages 42–44 of the Proposed Settlement Decree (Doc. 105).

On July 7, 2000, after evaluating the proposed settlement decrees, the Court entered an Order (Doc. 106) requiring counsel to address a number of points so as to determine whether the proposed Gilliam settlement met the requirements for preliminary approval. After the parties responded to that Order, the Court set the matter for hearing on October 6, 2000.

## III. ANALYSIS

By virtue of the proposed settlement decree in the DOJ suit, which contains injunctive provisions virtually identical to those in the proposed Gilliam decree, the Gilliam case essentially now involves only claims for compensatory and punitive damages. The Court so characterized the Gilliam case at the October 6th hearing, and counsel did not disagree. Although the Court has not yet signed off on the proposed DOJ decree, its approval is imminent.[5] Under the terms of the proposed DOJ decree and as represented by counsel at the hearing, the DOJ settlement is not contingent upon settlement of the Gilliam case. The question thus presented is whether the parties in the Gilliam case have satisfied the requirements of Fed.R.Civ.P. 23(b)(3) so as to permit certification of a settlement class.

■ Rule 23(b)(3) permits a case to proceed as a class action if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[6] In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Supreme Court of the United States made abundantly clear that the requirements of Rule 23(b)(3) must be met even when class

certification is sought in connection with a proposed settlement. In that regard, the Court stated that when parties seek a settlement-only class certification, a district court need not consider whether "the case, if tried, would present intractable management problems, *see* Fed.Rule Civ.Proc. 23(b)(3)(D), for the proposal is that there be no trial." However, the other requirements of Rule 23— including Rule 23(b)(3)—"demand undiluted, even heightened, attention in the settlement context." *Id.* at 620, 117 S.Ct. 2231. The Supreme Court unequivocally stated that district courts cannot ignore Rule 23 standards based on perceived notions of a settlement's fairness. On that point, the Court remarked: "Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted—that if a settlement is 'fair,' then certification is proper." *Id.* at 622, 117 S.Ct. 2231.

Earlier this year, the Court of Appeals for the Eleventh Circuit decided *Rutstein v. Avis Rent–A–Car Systems, Inc.*, 211 F.3d 1228 (11th Cir.2000); that case illustrates the virtual impossibility of certifying a class in a non-employment civil rights case where class members seek compensatory and punitive damages.

The plaintiffs in *Rutstein* alleged that Avis had a practice of refusing to issue corporate car rental accounts to Jewish customers. The district court certified the following class pursuant to Rule 23(b)(3):

[a]ll Jewish individuals and Jewish-owned businesses who, subsequent to January 1, 1990, have attempted to contract, have contracted, or will in the future contract with Avis to open an account for use in their business, and who were refused an account, had their account canceled, or were

---

**5.** At the hearing, the Court asked counsel in the DOJ case to discuss changing the dispute resolution procedure called for in the proposed DOJ settlement decree, from mediation to arbitration. The Court explained that it intended to close the DOJ case upon approving the settlement decree, and preferred that the parties arbitrate any disagreements other than those involving a major breach of the settlement decree. Counsel for the Government indicated that she would have to

check to see whether converting from mediation to arbitration was something the Department of Justice could do, but that she did not foresee a problem.

**6.** Before Rule 23(b)(3) even comes into play, Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation must be satisfied.

given a less advantageous account because of their religion, ancestry and/or ethnicity. 211 F.3d at 1232.

On appeal, the Court of Appeals reversed, deciding that the district court abused its discretion in certifying a class pursuant to Rule 23(b)(3). In discussing why the case did not meet Rule 23(b)(3)'s predominance requirement, the appellate court stated, in pertinent part:

> ... To establish that they are entitled to compensation, plaintiffs will have to prove that they actually suffered some injury, whether it be emotional or otherwise. The idea that individual injury could be settled on a class-wide basis is preposterous. Plaintiffs' claims for damages must "focus almost entirely on facts and issues specific to individuals rather than the class as a whole: what kind of discrimination was each plaintiff subjected to[, and] how did it affect each plaintiff emotionally and physically, at work and at home." *Allison [v. Citgo Petroleum Corp.]*, 151 F.3d [402,] 419 [ (5th Cir.1998) ]; *see also Holmes [v. Continental Can Co.]*, 706 F.2d [1144,] 1156 [ (11th Cir.1983) ] ("[M]oney damages are directly related to the disparate merits of individual claims and are not generally applicable to the claims of the class as a whole.") (quoting Rosen, Title VII Classes and Due Process: To (b)(2) Or Not To (b)(3), 26 Wayne L.Rev. 919, 923 (1980)); *Bogard v. Cook*, 586 F.2d 399, 409 (5th Cir.1978) (finding that case would probably not have been certifiable under Rule 23(b)(3) if money damages had been sought for each member of the class, because "[g]iven the lack of common questions of fact as to many of those claims, and the unmanageability of the suit had they been included, we cannot believe that the district court would have allowed the claims as part of that action if they had been recognized as potentially possible").

To understand, further, why liability for damages is a necessarily individualized inquiry, we have only to consider the disaster that would befall any class-wide settlement of this case. Suppose that the district court was called upon to approve a settlement fund to compensate all wor-

thy plaintiffs in the class. First, what could possibly be a fair amount for such a fund? $100 thousand? $10 million? $100 million? We have no idea, and neither would the district court. It would be impossible to calculate the sum of damages necessary to compensate all the class members (including a sum of damages representing the mental and emotional distress suffered by all the plaintiffs), because each plaintiff's damages will be dependent on what kind of discrimination the plaintiff was subject to, and what harm resulted. Any class-wide figure arrived at would not just be a guess at a fair settlement amount; the court might as well come up with ten numbers at random, take their average, square that amount, and add six. Whatever number the court came up with through this "method" would bear just as much a relationship to a reasonable settlement amount as a number arrived at through any other means.

\* \* \* \* \* \*

... Every member of the putative class seeks compensatory and punitive damages. The idea that proof of a policy or practice of discrimination could establish that *every member* of the class is entitled to such damages is, given the substantive elements of the underlying cause of action, untenable. Similarly, given that every member of the class will have to prove actual damage in order to receive compensation for their loss, the policy or practice issue cannot possibly predominate over all the other issues in the case that are necessarily capable of only individualized resolution. 211 F.3d at 1239–41.

■ Simply put, *Amchem* and *Rutstein* preclude class certification here. *Amchem* dictates that Rule 23(b)(3) requirements—with the exception of Rule 23(b)(3)(D)—must be met for a settlement-only class to be certified. *Rutstein* makes clear that certification under Rule 23(b)(3) is inappropriate where, as here, class members in a civil rights case not involving employment discrimination seek compensatory and punitive damages. Both decisions are binding on this Court; the Court cannot disregard them.

At the October 6th hearing, the attorneys attempted to distinguish *Rutstein* on its facts. The Court agrees that there are a number of differences between *Rutstein* and the case at bar. Nevertheless, counsel raise distinctions without a difference. While *Rutstein* did not involve a settlement-only class, the Eleventh's Circuit's discussion regarding the "disaster that would befall any class-wide settlement of this case," 211 F.3d at 1240, makes clear that *Rutstein's* analysis applies equally in the settlement context. The appellate court's even stronger pronouncement—"[t]he idea that individual injury could be settled on a class-wide basis is preposterous," 211 F.3d at 1239—transcends the particular facts of *Rutstein* and sounds the death knell for class certification in the present case.

■ Counsel also urged this Court to preliminarily approve this settlement notwithstanding *Rutstein,* so as not to reignite the ill will the underlying dispute generated. As tempting and convenient as that course of action might be, the Court is powerless to accept that invitation. The Court is bound to follow the law, and the law is clear. In *Amchem,* this nation's highest court flatly stated that a district court cannot certify a settlement class solely based on its judgement that the settlement is fair; the requirements of Rule 23(a) and (b) *must* be met. Moreover, *Rutstein* precludes certification of a class in a case such as this. Hence, notwithstanding the hard work the parties and the attorneys have devoted to their settlement, and the relative merits of the deal struck, this Court is legally bound to withhold class certification.

## IV. CONCLUSION

Based on the foregoing, it is ORDERED that the Joint Motion of Plaintiffs, Defendants, and the State of Florida for Preliminary Approval of Proposed Settlement Decree (Doc. 98), filed March 21, 2000, is DENIED. The five individual plaintiffs and the State of Florida are left to pursue this matter as a non-class action discrimination case.